UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cv-725-MOC-WCM

| TIMISHA MARTIN, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| SUNLIGHT FINANCIAL, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** comes before the Court on a Motion to Dismiss filed by Defendant Sunlight Financial, LLC ("Sunlight"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 15).

### I. PROCEDURAL BACKGROUND

This case arises from Plaintiff Timisha Martin's employment with Defendant Sunlight. Plaintiff brings a claim for retaliation under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, and 42 U.S.C. § 1981, based on two performance improvement plans that were issued before Plaintiff voluntarily resigned her employment with Defendant.

Plaintiff filed her original Complaint on December 23, 2020. See (Doc. No. 1). Defendant filed a motion to dismiss on April 20, 2021. (Doc. No. 5). In response, Plaintiff filed an Amended Complaint on May 4, 2021. (Doc. No. 12). On June 2, 2021, Defendant filed the pending amotion to dismiss the Amended Complaint. Plaintiff has filed a Response, Defendant has filed a Reply, and this matter is ripe for disposition. (Doc. Nos. 17, 18).

### II. FACTUAL BACKGROUND

The following factual allegations are taken as true for the purposes of the pending motion

1

to dismiss. Plaintiff worked for Sunlight as a Commercial Underwriter until she resigned. (Am. Compl. ¶ 12). In June 2019, Sunlight approved Plaintiff's request to telecommute several days per week as an accommodation for her anxiety and thyroid condition. (Id. ¶ 14). Five months later, in October 2019, Sunlight issued Plaintiff the first Performance Improvement Plan ("PIP"). (Id. ¶ 18).

On January 3, 2020, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") related to her first PIP. (Id. ¶ 28). On January 6, 2020, Sunlight issued Plaintiff a second PIP.[1] (Id. ¶ 30). When issuing the second PIP, Sunlight's Head of Human Resources Marnie Woodward told Plaintiff she would be terminated if she did not comply with the PIP's terms. (Id. ¶ 34). Plaintiff later resigned. Plaintiff does not allege that Sunlight used either PIP to terminate her employment, reduce her pay or benefits, or that the PIPs had any adverse effect on any terms and conditions of her employment. Outside of the two PIPs, Plaintiff does not allege that she was disciplined, in writing or otherwise, during her employment with Sunlight.

### III. STANDARD OF REVIEW

Defendant moves to dismiss Plaintiff's action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) provides that a motion may be dismissed for failure to state a claim upon which relief can be granted. A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint without resolving contests of fact or the merits of a claim. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992), cert. denied, 510 U.S. 828 (1993). Thus, the Rule 12(b)(6) inquiry is limited to determining if the allegations constitute

---

[1] Importantly, Plaintiff does not allege that Sunlight was even aware that the EEOC charge had been filed when the second PIP was issued.

"a short and plain statement of the claim showing the pleader is entitled to relief" pursuant to Federal Rule of Civil Procedure 8(a)(2). To survive a defendant's motion to dismiss, factual allegations in the complaint must be sufficient to "raise a right to relief above a speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Thus, a complaint will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

For the purposes of a Rule 12(b)(6) analysis, a claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556). The Court must draw all reasonable factual inferences in favor of the plaintiff. Priority Auto Grp., Inc. v. Ford Motor Co., 757 F.3d 137, 139 (4th Cir. 2014). In a Rule 12(b)(6) analysis, the Court must separate facts from legal conclusions, as mere conclusions are not entitled to a presumption of truth. Iqbal, 556 U.S. at 678. Importantly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. However, well-pleaded factual allegations are entitled to a presumption of truth, and the court should determine whether the allegations plausibly give rise to an entitlement to relief. Id. at 679.

**IV.   DISCUSSION**

To state a claim for retaliation under Title VII, the ADA, or Section 1981, the plaintiff must allege sufficient facts to show that: "(1) she engaged in a protected activity; (2) her employer took materially adverse action against her; and (3) the protected activity caused the adverse action." See Michael v. Va. Commonwealth Univ., No. 3:18-cv-125-JAG, 2019 WL 128236, at *3 (E.D. Va. Jan. 8, 2019) (citing Strothers v. City of Laurel, 895 F.3d 317, 327–28 (4th Cir. 2018)); see also Anderson v. Sch. Bd. of Gloucester Cty., No. 3:18cv745, 2020 WL

2832475, at *18 (E.D. Va. May 29, 2020) ("The elements of an ADA retaliation claim mirror the elements of [a] Title VII retaliation claim."); White v. Gaston Cnty. Bd. of Educ., 2018 WL 1652099, at *7 (W.D.N.C. Apr. 5, 2018) (same for claims under Section 1981).

As to the second element, "an employer's conduct must be so materially adverse as to dissuade a reasonable employee from engaging in protected activities." Michael, 2019 WL 128236, at *3; see also Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 56 (2006) ("[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.").

This "materially adverse" requirement reflects a fundamental limitation that these statutes do "not remedy everything that makes an employee unhappy," Jeffers v. Thompson, 264 F. Supp. 2d 314, 329 (D. Md. 2003), and, therefore, should not be used to redress the "trivial discomforts endemic to employment." Matthews v. Bd. of Educ. of Howard Cty., No. GLR-12 1758, 2013 WL 3506922, at *3 (D. Md. July 10, 2013). If not for this limitation, "minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like" would form the basis of a claim, Ashley v. Donahoe, No. 4:11-cv-03107-TLW-KDW, 2012 WL 2264667, at *1 (D.S.C. Apr. 11, 2012), and would effectively transform these statutes into a workplace "civility code[s]." Cherry v. Elizabeth City State Univ., 147 F. Supp. 3d 414, 426 (E.D.N.C. 2015).

It is well settled that a "negative performance review or a performance improvement plan alone will not constitute materially adverse action." Michael, 2019 WL 128236, at *4; see also Harris v. Herring, No. 3:20-cv-96, 2021 WL 100651, at *7 (E.D. Va. Jan. 12, 2021) ("[C]ourts in this circuit have repeatedly held that proposed termination[s], reprimands, performance

4

improvement plans, and negative performance evaluations do not constitute materially adverse action."); Byrd-Hedgepeth v. Capital One Servs., LLC, No. 3:19cv05, 2020 WL 5831822, at *27 (E.D. Va. Sept. 30, 2020) (holding that "placing an employee on a performance improvement plan, without more, does not constitute a materially adverse employment action"); Blount v. Ajinomoto Health & Nutrition, No. 5:20-CV-00356-FL, 2020 WL 6439167, at *3 (E.D.N.C. Aug. 14, 2020) (holding that "the write-up itself cannot form the basis of a retaliation claim because it is not a materially adverse employment action"); Anderson, 2020 WL 2832475, at *20 (holding that "placing [the plaintiff] on a performance improvement plan, in and of itself, did not constitute a materially adverse action"); Hinton v. Va. Union Univ., 185 F. Supp. 3d 807, 832–33 (E.D. Va. 2016) (recognizing that "courts within the Fourth Circuit have reached the [] conclusion that reprimands, without collateral consequences, are not 'materially adverse,'" noting that written reprimands are "so clearly non-actionable that the subject does not merit extensive analysis"); accord Wilson v. Gaston Cty., 145 F. Supp. 3d 549, 562 (W.D.N.C. 2015) (holding that "'reprimands and poor performance evaluations occur with some frequency in the workplace' and 'are much less likely to [constitute] adverse employment actions' than more serious employer conduct" (alteration in original) (quoting Adams v. Anne Arundel Cty. Pub. Sch., 789 F.3d 422, 431 (4th Cir. 2015)).

Rather, a performance improvement plan is only actionable as a form of retaliation "if the employer relies upon it to later take additional action, such as discharging or demoting the employee." Michael, 2019 WL 128236, at *4; see also Anderson, 2020 WL 2832475, at *20 ("A poor performance evaluation is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms and conditions of the recipient's employment."); White, 2018 WL 1652099, at *9 (holding that issuance of performance

5

improvement plans are "typically not considered materially adverse, unless they are essentially fabricated in support of a later adverse employment action").

Courts throughout the Fourth Circuit have routinely dismissed retaliation claims at the pleading stage where the plaintiff fails to allege that the employer subsequently used the performance improvement plan to take a materially adverse action against the plaintiff. See, e.g., Anderson, 2020 WL 2832475, at *20 (dismissing retaliation claim where the plaintiff did not allege that her employer "discharged or demoted her, or that [the employer] used the performance improvement plan against [her]"); Blount, 2020 WL 6439167, at *3 (dismissing retaliation claim where that plaintiff did not "allege[] that the write up led to any major change in his employment or that [the employer] took any specific action after writing him up"); McLaughlin v. Barr, No. 1:19-CV-318, 2020 WL 869914, at *10 (M.D.N.C. Feb. 21, 2020) (dismissing retaliation claim where the negative performance evaluation "did not lead to further discipline"); Michael, 2019 WL 128236, at *4 (dismissing retaliation claim based on negative performance evaluation where the evaluation was not used to "precipitate any discharge, demotion, loss of pay, or other collateral consequence"); Chughtai v. Kasier Permanente, No. PX-15-2963, 2018 WL 3049198, at *8 (D. Md. June 20, 2018) (dismissing retaliation claim where the plaintiff failed to allege that the written reprimand led to "actual, adverse, job-related consequences," noting that "plaintiff's belief that a written warning could have impacted later job performance evaluations was insufficient"); Hinton, 185 F. Supp. 3d at 833 (dismissing retaliation claim based on written reprimands, noting that "allegation of a reprimand, without alleging any other adverse consequences, does not properly plead the type of materially adverse action that would deter a reasonable worker engaging in [a] protected activity").

Here, the Amended Complaint fails to allege that Sunlight ever used these PIPs "to later

6

take additional action" against Plaintiff, such as demotion or discharge. Accord Anderson, 2020 WL 2832475, at **19-20. Plaintiff's retaliation claims are, instead, based solely on the fact that she received two PIPs, but there are no allegations that she suffered any adverse consequences actions following the issuance of the PIPs.

Plaintiff alleges that Sunlight's Human Resources manager told her she would be terminated if she did not comply with the terms of the PIPs. See (Am. Compl. ¶ 34). However, "the mere fact that failure to abide by [the PIP's] terms could lead to termination does not transform the PIP into a materially adverse employment action." Gorman v. Covidien, LLC, 146 F. Supp. 3d 509, 525 (S.D.N.Y. 2015); Zoll v. Northwell Health, Inc., 16-CV-2063 (JMA) (AYS), 2019 WL 2295679, at *14 (E.D.N.Y. May 30, 2019) ("[B]eing placed on a 'performance improvement plan' or 'PIP' which requires an employee to abide by certain instructions for a period of time to avoid termination, does not constitute an adverse action."). Rather, the case law clearly holds that a performance improvement plan is only actionable when "the employer subsequently uses the [the performance improvement plan] as a basis to detrimentally alter the terms and conditions of the recipient's employment"—allegations that are completely absent from the Amended Complaint here. Anderson, 2020 WL 2832475, at *20; see also White, 2018 WL 1652099, at *9 (holding that issuance of performance improvement plans are "typically not considered materially adverse, unless they are essentially fabricated in support of a later adverse employment action").

Plaintiff's allegation that she could have been terminated at some point in the future if her performance did not improve fails to meet this standard. Indeed, as the name suggests, the purpose of a performance improvement plan is to put the employee on notice that they could face potential adverse action if their performance does not improve. Plaintiff does not allege that the

7

PIP was subsequently used to terminate her employment. If the mere possibility of that an employee "could" be terminated rises to the level of an adverse employment action, then the exception would swallow the rule, transforming all PIPs into materially adverse employment actions—a position courts in the Fourth Circuit have soundly rejected. See, e.g., Brown v. SDH Educ. East, LLC, No. 3:12–cv–2961–TLW, 2014 WL 468974, at *7 (D.S.C. Feb. 4, 2014) (dismissing retaliation claim based on written warning which stated that the plaintiff would be terminated if she committed another offense, holding that "unrealized threats of termination are not actionable adverse actions"); Nam v. 2012 Inc., No. DKC 15-1931, 2016 WL 107198, at *6 (D. Md. Jan. 11, 2016) (dismissing retaliation claim where the employer "merely informed [p]laintiff that he could be terminated if he committed another offense"); Wonasue v. Univ. of Maryland Alumni Ass'n, 984 F. Supp. 2d 480, 492 (D. Md. 2013) ("[N]one of the following constitutes an adverse employment action in a retaliation claim: failing to issue a performance appraisal . . . or issuing a personal improvement plan, an Attendance Warning, a verbal reprimand, a formal letter of reprimand, or a proposed termination.").

In sum, Plaintiff does not allege that Sunlight ever used the PIPs to take any materially adverse action against her. The fact that Plaintiff was informed that she could be terminated if she did not comply with the PIPs is not enough to transform the PIPs into materially adverse actions. Accordingly, Plaintiff has failed to state a claim and her claims must be dismissed with prejudice.

## V. CONCLUSION

For the reasons stated herein, Defendant's motion to dismiss is granted, and Plaintiff's Amended Complaint will therefore be dismissed with prejudice.

**IT IS THEREFORE ORDERED** that:

(1) Defendant's Motion to Dismiss, (Doc. No. 15), is **GRANTED**.

(2) This action is dismissed with prejudice.

Signed: July 14, 2021

Max O. Cogburn Jr.
United States District Judge